## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**CLEVELAND MOSEBY, JR.**                                                                  **PLAINTIFF**

**V.**                 **CASE NO. 4:21-CV-00128-JM-JTK**

**COMMISSIONER of**
**SOCIAL SECURITY ADMINISTRATION**                               **DEFENDANT**

### RECOMMENDED DISPOSITION

This Recommended Disposition (Recommendation) has been sent to United States District Judge James M. Moody Jr. Either party may file written objections to this Recommendation. Objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

### I. INTRODUCTION

On August 7, 2018, Cleveland Moseby Jr. ("Moseby") applied for disability benefits, alleging disability beginning on May 5, 2018. (Tr. at 10). His claims were denied both initially and upon reconsideration. *Id*. After conducting a telephone hearing on June 3, 2020, an Administrative Law Judge (ALJ) denied Moseby's application on August 5, 2020. (Tr. at 20). Following the ALJ's order, Moseby sought review from the Appeals

Council, which denied his request for review. (Tr. at 1). The ALJ's decision thus stands as the final decision of the Commissioner, and Moseby now seeks judicial review.

For the reasons stated below, this Court should affirm the decision of the Commissioner.

## II. THE COMMISSIONER'S DECISION

The ALJ found that Moseby had not engaged in substantial gainful activity since the alleged onset date of May 5, 2018. (Tr. at 18). At Step Two, the ALJ found that Moseby had the following severe impairments: atrial fibrillation, obesity, obstructive sleep apnea, right hip degenerative joint disease, lumbar spine degenerative disc disease, bilateral knee osteoarthritis, major depressive disorder, and chronic heart failure. *Id*.

After finding Moseby's impairments did not meet or equal a listed impairment (Tr. at 13), the ALJ determined that he had the residual functional capacity ("RFC") to perform work at the sedentary exertional level, except that: (1) he could never climb ladders, ropes, and scaffolds but could occasionally climb ramps and stairs; (2) he could no more than occasionally balance, stoop, kneel, crouch, and crawl; (3) he could not be exposed to unprotected heights; (4) he could not operate foot controls with his lower extremities; (5) he could not be exposed to hazards; (6) he could not operate dangerous machinery and driving could not be required as part of job duties; (7) he could have no exposure to temperature extremes of heat or cold; (8) he could not have concentrated exposure to fumes, odors, or gases; and (9) he would be limited to simple routine repetitive task jobs where supervision is simple, direct, and concrete and reasoning levels cannot exceed 3. (Tr. at 14).

Relying upon the testimony of a Vocational Expert ("VE"), the ALJ found that Moseby was unable to perform any of his past relevant work as a truck driver or cook, but that Moseby's RFC would allow him to perform jobs that exist in significant numbers in the national economy, including the jobs of inspector and assembler. (Tr. at 18-20). The ALJ concluded, therefore, that Moseby was not disabled. (Tr. at 20).

## III. DISCUSSION

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It

means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

   B.   **Moseby's Arguments on Appeal**

Moseby contends that the ALJ's decision is not supported by substantial evidence. He argues that the ALJ erred by: (1) finding at Step Three that his combination of impairments did not medically equal Listing 4.02, governing chronic heart failure; (2) failing to properly evaluate his subjective complaints; and (3) failing to include all of his functional limitations in his RFC. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

Moseby argues that his impairments medically equal Listing 4.02 for chronic heart failure,[1] which requires—among other criteria—medical documentation of the presence of systolic or diastolic failure[2] while on a "regimen of prescribed treatment." *See* 20 C.F.R. Pt. 404, subpt. P, app. 1 § 4.02. The ALJ determined that Moseby's cardiovascular impairments did not meet this listing because the record contained "no documentation of

---

[1] The Listings describe chronic heart failure as "the inability of the heart to pump enough oxygenated blood to body tissues. This syndrome is characterized by symptoms and signs of pulmonary or systemic congestion (fluid retention) or limited cardiac output." 20 C.F.R. Pt. 404, subpt. P, app. 1 § 4.00D1a.

[2] Systolic dysfunction and diastolic dysfunction are the two main types of chronic heart failure, and a claimant must demonstrate one or the other to meet Listing 4.02. *See* 20 C.F.R. Pt. 404, subpt. P, app. 1 § 4.00D1a. To meet the criteria for systolic failure, a claimant must provide documentation of "left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability[.]" *Id*. at § 4.02A1. To meet the criteria for diastolic failure, the claimant must show "left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability." *Id*. at § 4.02A2.

ongoing systolic or diastolic failure." (Tr. at 13). The ALJ also factored Moseby's apparent problems with compliance to care into the determination. Moseby contends that the ALJ's analysis was lacking, and that the combination of his cardiovascular impairments and obesity medically equal the listing.

The analysis performed by the ALJ at Step Three "streamlines the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). To qualify for disability under the listings, a claimant bears the burden of establishing that his condition meets or equals *all* of the specified medical criteria. *Marciniak v. Shalala*, 49 F.3d 1350, 1353 (8th Cir 1995). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). In the same vein, establishing that a combination of impairments is "equivalent" to a listing requires that the claimant present medical findings which are equal in severity to *all* of the criteria for the most similar listed impairment. *Id*.

Substantial evidence supports the ALJ's determination that Moseby's impairments did not medically equal Listing 4.02. Although the record aptly demonstrates that Moseby suffered from atrial fibrillation, atrial flutter, elevated blood pressure, failed heart ablation, and obesity, Moseby has not shown that these medical findings are comparable in kind or severity to those required by the listing. Test results from March 2018 showed persistent atrial fibrillation, but they also showed normal left ventricular wall thickness and internal dimensions, normal diastolic dysfunction, and ejection fraction of 45%, which is in excess

of the "30 percent or less" benchmark contemplated by the listing. (Tr. at 1495). Test results from April 2019 showed normal left and right ventricle structure and function with no regional wall motion abnormalities, mild left atrial enlargement, and ejection fraction estimated at 35-40%. (Tr. at 1558-1559). In May 2019, Moseby's cardiologist described his atrial fibrillation as "mildly symptomatic at this time" but did state that significant left ventricular dysfunction was noted on the echocardiogram. (Tr. at 1566-67). However, in March of 2020, clinical findings showed normal heart rate and rhythm with no murmurs, while echocardiogram results showed only a mildly dilated left atrium, a normal-sized right atrium, and normal systolic function in the left and right ventricles. (Tr. at 1850-1852). These findings are largely normal and thus do not rise to the severity of the criteria outlined in Listing 4.02. Moreover, clinical notes show that Moseby was noncompliant with his heart medication on multiple occasions, indicating at least some lapse in following the "regimen of prescribed treatment" required by the listing.

      Moseby has also not demonstrated that the functional effects of his cardiovascular impairments are of listing-level severity. Moseby alleges his symptoms of fatigue, weakness, shortness of breath, and chest pain very seriously limit his ability to perform activities of daily living (ADLs). However, he reported on his function report that he takes care of his children and pets, drives, and shops in stores and online daily for 1-3 hours. (Tr. at 233-236). During the relevant period, he reported taking trips to Washington DC, Texas, and Florida. (Tr. at 988, 1830). He attended a music festival out of town and went to a Dallas Cowboys game. (Tr. at 744). He helped cater a wedding, which he described as "pleasurable." (Tr. at 1232). He reported in January 2020 that he had started an exercise

6

regimen, walking several times weekly. (Tr. at 1862). The ability to perform these activities supports the ALJ's determination that Moseby's impairments did not medically equal the listing. Social Security listings "define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). The ALJ's conclusion that Moseby did not meet this "very high standard" is supported by substantial evidence. *See McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011).

Moseby faults the ALJ's evaluation of his credibility, but the ALJ properly considered Moseby's subjective complaints in accordance with the *Polaski* factors. *See Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) (when evaluating subjective complaints, ALJ must consider medical evidence as well as evidence relating to claimant's daily activities; duration, frequency, and intensity of pain; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions). In evaluating a claimant's credibility, an ALJ need not discuss each *Polaski* factor as long as he or she recognizes and considers the *Polaski* analytical framework. *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004). An ALJ can decline to credit a claimant's complaints if the evidence as a whole is inconsistent with the claimant's testimony. *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). "If the ALJ discredits a claimant's credibility and gives a good reason for doing so, we will defer to its judgment even if every factor is not discussed in depth." *Perkins v. Astrue*, 648 F.3d 892, 899 (8th Cir. 2011) (citation omitted).

Moseby alleged that his cardiovascular impairments caused him fatigue, dizziness, and shortness of breath which occurred even when just walking across the house, causing him to require two or three rest breaks or naps per day for hours at a time. He told the ALJ that at most, he could sit upright for one hour before needing to lie down. He testified that the heaviest thing he could lift was a two-liter bottle and that he was not able to reach overhead.

The ALJ gave several good reasons for discounting Moseby's complaints. Most significantly, the ALJ found there were inconsistencies in Moseby's overall symptoms and functionality, and he pointed to one clinical note in the record that particularly undermined Moseby's credibility. On July 17, 2019, a nurse at Baptist Health Medical Center wrote:

> Mr. Moseby talked with me today regarding his prior symptoms. He said he is not symptomatic and had been telling us that he was due to how he had to report at the VA for help. He said at the VA he had to have symptoms and even dress a certain way for them to continue to treat him. He wanted to let us know, "I can pick up 400 pound objects, I can cut wood, I can do anything even with my blood clot and Afib. I feel fine. I wanted to let y'all know and be truthful with y'all. At the next office visit you may have to remind me to be truthful and to remind me this is not the VA I can be honest."

(Tr. at 1802). Moseby characterizes this statement as an exaggeration on his part, but at minimum the note demonstrates he has lied to at least one medical provider about the severity of his symptoms. The ALJ also took issue with Moseby's history of poor compliance with the management of his cardiovascular impairments. *See Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) ("[F]ailure to follow a prescribed course of remedial treatment without good cause is grounds for denying an application of benefits.").

The record demonstrates Moseby's sleep apnea was under good control with a CPAP device and his mental state was stable on medication. Impairments which can be controlled by treatment or medication are not considered disabling. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002). As for Moseby's complaints about pain, the ALJ noted that conservative treatment through physical therapy reduced his low back pain. (Tr. at 753). Although the medical record does document arthritis in his knees and joint disease in his hip, Moseby demonstrated full strength in both hips and knees with a normal gait upon evaluation, and he has denied pertinent musculoskeletal complaints to his primary care provider since that time. (Tr. at 935, 944-946). He testified that the VA gave him steroid cream and advised he could take aspirin for the inflammation, but that he does not take pain medication for his impairments. (Tr. at 42). The conservative treatments Moseby received for his joint pain, and his failure to seek further assistance for these impairments beyond 2018, further support the ALJ's decision to discount Moseby's testimony about his limitations. *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015). Substantial evidence supports the ALJ's credibility determination.

After evaluating Moseby's credibility, the ALJ determined that he was capable of performing work at the sedentary level with additional postural, environmental, and mental restrictions. (Tr. at 14). Moseby argues that the ALJ failed to include all of his alleged impairments in the RFC determination, but the ALJ considered all of the relevant evidence, and he was entitled to exclude any alleged impairments that he properly rejected as untrue or unsubstantiated by the record. *Perkins*, 648 F.3d at 902. Moseby's contention that he would be consistently unable to perform his job 25% of each working day is not supported

by the record and the ALJ did not err by declining to include such a limitation in the RFC. As discussed above, substantial evidence supports the RFC assessment, including normal examination findings, poor compliance with medication, improvement with conservative treatment, and inconsistent reporting of functional abilities. The ALJ accurately posed a hypothetical question to the VE that accounted for Moseby's credible limitations, and those limitations are reflected in the RFC. The ALJ did not err in this regard.

### IV. CONCLUSION

Substantial evidence supports the Commissioner's decision that Moseby was not disabled. The Court should affirm the Commissioner's decision and enter judgment in favor of the Defendant.

IT IS SO ORDERED this 1st day of February, 2022.

_____
UNITED STATES MAGISTRATE JUDGE